The District Court's holding in this case is based on the conclusion that the marital deduction was something that Mr. Souder intended to provide for in his will. The problem with that analysis is that the will doesn't say that. This isn't a case where there was interoperable drafting and there's some other indication in the will, like in the Assata Dawson case, such as a heading or a title, that he was intending to take advantage of the marital deduction. There's no mention of the marital deduction at all in Mr. Souder's will, and there's no mention of an intent that his estate not pay tax. Is that a requirement under Washington law to – What Washington law requires to make a marital – to reach the conclusion that a marital deduction gift is being made is that either it's said on the face of the will or the recently amended statutes allow considering extrinsic evidence to determine if marital deduction was intended. Here, the District Court reached the conclusion that it wasn't even necessary to reach extrinsic evidence, and it in fact denied the government's motion under Rule 56F to have the opportunity for discovery on that issue because it concluded that it could find on the face of the will that a marital deduction was intended. But basically by taking extrinsic evidence out of the picture, the District Court created a situation where really the statute was the same as it was prior to amendment in the estate bond case several years ago, where all you look at is what's on the face of the will. And we believe that the government – the government believes that the District Court erred in concluding from the face of the will that a marital deduction was intended. So let me ask you, so if the new statute applies, it's the government's position that you were entitled to discovery and to essentially have a contested trial to determine his – the student's intent? Yes, Your Honor. If the – if the – Do you dispute that the amended statute would apply, does apply to this case? The amended statute would apply, but basically what the District Court did was to say that, no, we're not even going to look at extrinsic evidence because we find on the face of the will that a marital deduction gift was intended. And its basis for inferring that intent just aren't there and can't be distinguished from the case – the cases that this – this Court decided in a state of Heim and that the tax court decided in an estate bond, where applying a statute that just involved looking at the face of the will concluded where there was no mention of the marital deduction. So, again, the government believes that there is some extrinsic evidence that would show that – that his intent was not to create a marital – Well, I don't think the government – I think the marital deduction is something that should be strictly construed, and I think that if there were a remand, it would be the state's burden to show that he – a marital deduction was intended. There were some affidavits submitted with the estate's motion for summary judgment, and the government had a motion for judgment on the pleadings and moved for additional discovery if the court relied on extrinsic evidence rather than entering judgment on the pleadings. And the court denied that motion. If it were necessary to remand, a state would have to show that a marital deduction was intended. And the evidence that has been produced in support of their motion for summary judgment really doesn't make that showing. No one in any of the affidavits says that Mr. Souder ever told him that he intended to take advantage of the marital deduction or even that his estate would pay no tax. What those affidavits do talk – do do is they try to infer from his conversations about his insurance planning and from his notes and prior wills that he used as models what his intent might have been, but there's no evidence of what he actually was trying to do. What there also is evidence of in those affidavits is that he knew a lot about tax law, that he considered himself something of an amateur expert on tax law. And in this case, there is a Treasury regulation example that's directly on point that makes clear that the survive-to-distribution requirement that he put in his will is one that creates a non-deductible terminable interest that doesn't fit with any exception. It spells out that if you have a survivorship interest that is not limited to six months, as was the case here, because the estate didn't have to be distributed within six months, then you have a terminable interest that is not deductible. Why wouldn't this be his intent interpreted in light of the Washington statutes, which would indicate that it is within the six months? Well, I don't think the Washington statutes actually do that, Your Honor. The Washington statutes, as currently amended, I think, first of all, they do hinge on showing that he intended the marital deduction to be taken advantage of in his will. And that's the premise. The definition is that he must have intended the marital deduction to be something that he was taking advantage of. But then the provision that specifically deals with reforming a survivorship requirement that could exceed six months, to limit that survivorship requirement to six months so that it would become within Section 2056B3, safe harbor, actually is limited to gifts and trust. That provision spells out that if there is a marital deduction gift in excess of six months, that means basically he intended there be a marital deduction gift, but he put in a survivorship requirement greater than six months, that's governed by two provisions. First, it's reformed to be a gift with a survivorship requirement of six months or less. And then secondly, and the statutes worded so both clauses apply, it spells out that that gift must be one in trust. The property must be held in trust, meeting the requirements of Internal Revenue Code 2056B7, which is the Qualified Terminable Interest Property Provisions. And so it's also in a section entitled Limited to Trust. The subsection title includes Limited to Trust, and the heading of the chapter is Dealing with Gifts in Trust. So I think there's, you know, this statute spells out that you can't make that substitution, that these are just, that you just treat the gift as, in this case, where it's an outright gift and not in trust, as one where you substitute the requirement of survival to distribution with a requirement that Ms. Souder just survived six months. The statute simply doesn't do that. But I think you don't even have to get to that analysis, because there's no evidence of intent here, either in the extrinsic evidence or on the face of the will. On the face of the will, this case is really indistinguishable from a state of Vond and a state of Heim where they're also claiming the gift. But you say we can't consider the extrinsic evidence. Well, it's not. Because the district judge didn't. Well, if the court believes the extrinsic evidence needs to be considered here to decide the case, either because it disagrees with our conclusion that the saving statute's not applicable, or because it, then I think a remand is appropriate, because the government should be allowed to have the discovery to rebut the extrinsic evidence if the court thinks the evidence that was presented by the estate shows an intent. But do you think it's possible for us to consider the extrinsic evidence? I think the court. I think it's possible for us to consider the extrinsic evidence. I think that there are several ways that this court can approach this case. The court can determine that the saving statutes don't apply, either because they're limited to trust, or also because there are Supreme Court cases that say that the states cannot create legal fictions to circumvent the estate tax law. The Kraft case and the Dry case that are cited in our briefs prevent the court from even considering these saving statutes. And I think if these saving statutes don't apply, the court doesn't need to read the question of extrinsic evidence. So what is the question? What's the answer to my question as to whether you are arguing that we can or cannot consider the extrinsic evidence? I think the court can rule for the government that there is no... No, just answer the question. I think the government has not had the opportunity to discovery, to obtain extrinsic evidence. You have the estate's evidence here, and you don't have the government's. So the answer is what? If you're going to reverse an inner judgment from the government, you cannot consider the extrinsic evidence. But if you are going to enter judgment for the estate on the basis of the extrinsic evidence, you cannot do that. You should remand for the government to have an opportunity to rebut that evidence. If you're going to rule... Now, the district court judge said, well, you guys had... The government had enough time for discovery. The district court was asking the government, and saying that, to do a needless exercise in discovery. We had a pending motion for judgment on the pleadings. Discovery had just started, and there was significant time left in discovery. And it didn't make sense while there was a pending motion for judgment on the pleadings. To be expending resources on discovery. And the district court made clear that its primary reason for denying discovery was that it didn't think it was necessary to reach the extrinsic evidence. What was the discovery that the government wanted? The government would have liked the opportunity to depose the persons who provided affidavits, and Mrs. Souder, I guess this person included Mrs. Souder and her son, and the insurance representative, depose those persons to be able to address the contentions they made regarding Mr. Souder's intent. And without an opportunity to depose those persons, the government had no way to respond to those allegations that Mr. Souder had intent to take advantage of. Why would he ever intended not to have a meritable deduction exclusion? I don't know why he wouldn't have intended to have that exclusion, but it's not for us to guess at what he was getting at. People have all kinds of reasons for thinking... Maybe he liked to pay taxes, right? Maybe, or maybe he just had a grudge against his wife. We don't know. We don't have the evidence to surmise that. But the court shouldn't surmise what his intent might have been. And I think in the state of Haim, the argument was made that surely a taxpayer would want to minimize the deductions, or excuse me, minimize the amount of estate tax they pay. And the court said that was not a ground from which to infer intent. Just a generalized intent... I can't see any reason in this circumstance at all why he would particularly want his wife to survive distribution. This in the second marriage with other children or anything, this was a situation in which I think that phrase just got stuck in there because he looked at another will. Well, he actually put that language in his will, and it's clear and it's unambiguous language, and there's no rule of construction where such language is clear and ambiguous that allows the court to simply disregard it. The fact of the matter is that he did put it in his will, and since he did include it, it has to be given... It should be given effect. But the Washington statute seemed to kind of try to soften that harsh conclusion by saying, looking at the instrument or looking at extrinsic evidence, his clear intent was for a marital deduction. That's what the statutes are aimed at alleviating. Well, that may be what they're aimed at alleviating, but they don't quite do the trick here, first of all, because the provision dealing with survivorship requirements is limited to provisions and trust. And I don't know if the legislature may have been trying to make their wills within the liberal requirements of the QTIP provisions in 2056-57. That may have been their purpose. And the legislature, to the extent the legislature is just trying to alleviate the harshness of the federal estate tax laws, Kraft and Dry indicate that the state, those statutes shouldn't be given effect for that purpose. And that's really what we have here. We have state statutes that are designed simply to relieve the state tax burden for the state citizens. And so I think there's nothing. Well, not exactly. It's to, as the way it appears to me, is to make a real, more realistic determination of the testator's intent. And I think you, the government, as well as the other party, agree that that's the primary thing you're looking at, is what does the testator intend? Aren't these statutes designed to look more realistically at what a testator would really have intended? But to assume that what Mr. Souder intended here was that Mr. Souder not be required to survive distribution of his estate, read then an intent that simply isn't in that will, and it doesn't fit squarely within any of these statutes, and would revise his will in a way that's different from how it's worded, and there's no basis in the will for doing that. The fact is— Apparently, what you're arguing is, you know, the intent would say whether or not, well, I want to preserve the merit of deduction. I mean, there's no intent of that nature. The intent is whether or not I want my wife to survive six months or, you know, my intent is that my wife survives the distribution of my estate. It's those kinds of intents that, don't you think, make a difference? Well, yeah, that's the reason that the will can't just be revised to say, we're going to make it only a survivorship requirement for six months because—to make sure that the devisee doesn't pay more taxes, because the testator might have had a reason, and there's nothing on the record that explains what that reason is, but he may have had a reason. Did you say there was something in the record here that indicated that the decision was something that was taxed? I believe that the extrinsic evidence does indicate that he had some expertise in tax law, and here there is a Treasury regulation that makes clear what, in an He wasn't a tax lawyer. He wasn't a tax lawyer. But he had some— But if he read even the examples in the regulations, it would have made clear that what he was doing was creating a terminable interest. Is there any suggestion that he read the examples, those tax— There's no indication whether he did or not, Your Honor, but— He may have looked at, you know, one of those off-the-shelf books on how to create a will. Anything's possible, Your Honor, but the point is that what he did say—  He might have, but what we're left with were the words he actually used— But, Your Honor, you never had discovery on that, did you? We didn't have any opportunity for discovery on that, and we're left—you know, if we're not given that opportunity for discovery, we're left with words he actually used which create a terminable interest. And it can't—it seems to me that to undo what—the words he actually used for a guess at what he intended is contrary to the Washington laws of interpreting wills. You look at, first, at the face of the will and what the testator actually said, and that governs his intent. And none of the things like the fact that—I mean, in the Heim case, the State of Heim case, the Court rejected arguments that the general assumption that he intended to avoid a state tax should be a basis for referring intent—a contrary intent. The Bond case involved a non-intervention will, and there, when it wasn't on the face of the will that the marital deduction was intended, the Court still found it as—we would urge the Court to hear that no marital deduction was intended because it wasn't intended. In the Heim case, there were no statutes like we have in Washington, were there? That's a California case. The Heim case had a similar California statute. It didn't permit looking at extrinsic evidence, but it did have a savings provision saying that dealing with a marital—when a marital deduction was intended and the Court found that because there was no intent on the face of the will, then it wasn't a situation where the savings statute applied. And similarly here, if you just look at the face of the will, there's no intent that can be inferred. And if you're going to go further and try to apply—if the Court's going to go further and try to apply those savings statutes, then it's got to look at the fact that the district court erred in its conclusion from the face of the will, because that's in the similar Washington case in Bond. And then it's got to look at whether the extrinsic evidence could support the conclusion that he had such an intent. You've got about three minutes. Do you want to reserve? Do you ever try to mediate this? It was assigned to the Circuit Mediation Office, but no resolution was reached, Your Honor. All right. Thank you. We'll hear from the State. May it please the Court, my name is Gary Randall, with my colleague James Workman, where we authored the brief for the estate. I'll argue the case for the estate. He was the appellee in this case. This is a fascinating case to me. The coincidences are interesting. Judge Hug, of course, authored the Heim case in the Ninth Circuit. The rest of the story is that the government lawyer in the tax court had been a student of mine when I was teaching at Gonzaga Law School. She apparently learned too much. The other, the Bond case, Mr. Altman had also been a student of mine at Gonzaga Law School. Apparently, I taught him too well, too. What about the deceit? The deceit, interestingly enough, attended a lecture that I put on on taxation, but he attended it after he drafted his will. And you never found the codicil? Never found the codicil. All right. Gentlemen, it's an interesting case in that it seems to be a strictly intentioned case. It appears we're trying to construe the intention of a layman. I don't think he was an expert in tax law. And certainly, when you get into the phrase, survive the distribution, and you talk about layman's self-drafted wills or borrowed wills, you get a little different rule. Judge Hawk, for instance, in the Central District of California, in an early case, said we have different standards for survive distribution when a layman drafts the will as we do when an expert drafts the will. We give, I think, the layman a little more leeway in what he or she puts into the will. One of the matters that the court was particularly interested in, I think, was the effect of the statute, which Washington law now says, we're going to look at the will and extrinsic evidence and look at the preponderance of the evidence. To determine what the intention of the test data was. My opposing counsel, a very able lawyer, I think misconstrues the Washington savings statute. As she construes that statute, it is necessary that the property initially be in a trust in order for the statute to apply. That isn't true. For one thing, Washington law says we're not going to look at section headings. And the fact that this happens to be in the trust area doesn't make any difference. But it is specifically addressed to trust the statute. The statute starts out by talking about marital deduction gifts. And if I remember correctly, it talks about marital deduction gifts in general, whether they're in a will or in a trust with the statute. Does that answer your question, Your Honor? The statute is fairly broad in its application. Let's see if I can find this thing. It's fairly broad in its application. And I cannot put my hands on it right now. I believe that's covered in the brief in some detail. What I wanted to point out was that it would make no sense at all to construe the second part of that statute as saying. And that's by the way, the statute, it says, if it appears that we're trying to obtain a marital deduction gift, it would make no sense to say, well, that's only going to apply if you had started out with a qualified terminal interest trust. That doesn't make any sense. Q-tip trusts, qualified terminal interest property trusts, are rarely going to have a six-month survivalship clause. There's no reason for them. What the statute was intended to do, as I understand it, this subsection 2 is to say, well, all right, in the tax world, you tried to create a marital deduction. Now, that's going to have an interesting effect in the real world. That's what the legislature is saying. In the real world, if we say, look, anything in excess of six months, survivalship clause, is going to be backed up to a six-month period. And suppose you had this situation. Tony Souder dies in 1995. He requires his wife to survive till distribution in order to obtain the estate. His wife lives seven months and dies. Her will leaves her property to her church. His will, if she survived to distribution, leaves his property to her, and if she doesn't, to his kids. Now, his kids and the church are going to get in a debate, because this statute is going to actually cause that property to vest in her six months after the date of death. And the church is going to say she's got the power to dispose of it. That's why I think that subsection came in in 1997. I think the Washington legislature said, good grief, not only have we cured a tax problem, we've created a real problem. So we're going to create a Q-tip trust, if you will. Now, the problem is you can't create a Q-tip trust for Tony Souder. He's been dead for two years. I don't see anything in that subsection that limits it to gifts and trust. I think what I do see in that subsection, and in Washington law in general, is a preference for the marital deduction. Senior Judge Frem Nielsen, a very eminent jurist, said, you know, if we use common sense in this, if we're going to use common sense in this matter, why would anybody want to pay tax twice? You know, the marital deduction rule is like that old oil filter commercial that said, pay me now or pay me later. It doesn't intend to say pay me twice. When Maurice Souder dies, the government will be paid. So we don't violate the reason for the rule. This court in the Ellenson case, and I think the Ellenson case is a fascinating case, almost as interesting as Arndt's. The Ellenson case comes along and says, well, boy, here we have some very able lawyers. It's a qualified terminable interest case. We have some very able lawyers who are improperly drafting a qualified terminable interest property agreement, trust, if you will. Oh, and by the way, they violated one of the proposed regulations because they said, let's let the property be accumulated, the income be accumulated as opposed to being distributed. This circuit said, you know, the intention of the testator was obviously to obtain a marital deduction. They did a lousy job. And those lawyers probably spent some real uncomfortable hours as they've checked out their malpractice coverage. But in that case, this court said, when the intention is so clear that the marital deduction be obtained, we're going to honor that intention. We're going to construe the intention, which is slightly different from what the regulation says. We're going to construe what the regulation really means. And that's basically what we're asking to do in this case. Generations of law students have struggled with survival to distribution with the marital deduction. A very able lawyer in the bond case, W. Panschel, actually put the fatal language into the bond case by accident. I think he had a pretty uncomfortable two or three years until the tax court said, well, at least we're going to vest the real estate at the time of death. There's another factor in this case that's also important. The will that Tony worked from, his wife's will. If you look back on what his will said, the original will that was drafted for him by Reiner Deglow in 1963, it had nothing about survive to distribution in it. The only place we found survive to distribution was in Marie's will. Now, if Marie had died first, I'd be a little more uncomfortable making this argument, because I might, you folks might be saying to me, was she intended to have survived to distribution language in her will? Her lawyer intended it. Tony cribbed from that will. Why did he put it in there? I'm not sure that he meant to. If you look at the handwritten notes. He put it in there. Well, he copied it. Why? Question is, I think he was probably not thinking. If you or I did it, we probably would be fairly careful about not putting that in there. If I'm a layman, as it were, and I look at somebody else's will that I'm stealing from, because I don't want to pay a lawyer, I'm going to possibly do something I shouldn't have done. Now, we aren't even sure that he intended to do that because we have those handwritten notes, the extrinsic evidence. It doesn't say anything about that. That gets to a question of mine. How do we arrive at your result without considering the extrinsic evidence that your honor is? I'm sorry, that's that's the $600,000 question. There is a reason that we have three bequests in that will that equal exactly $600,000, which is the amount that can pass free of tax in 1987. We have in Tony's will a provision for non-intervention powers. State of Washington is very unusual. It's not like California. Due respect to California law, your system and probe that the system and probate there is start the probate after a reasonable period of time. Give all the property to the lawyer as a fee. The system in Washington is very simple. We let you, if you want to put it in your will, have unlimited power to distribute as soon as the will is offered for probate. This is the equivalent of constructive receipt in the world of income tax. Anytime that she wanted to take that property out of that estate for herself, she could. So we have two factors in the will. We have the $600,000 question. And we have why else would she put that exact amount? Sure. If he'd been smart, he would have said it's going to be $200,000 if I die in 84, and it's $300,000 if I die in 85. He didn't have any intention of dying. The man's in his 60s. He doesn't plan to die until this thing is fully phased in. If you have a good lawyer drafting that, that good lawyer may very well say, let's use a formula class. Let's put all this other stuff in. He knew what he wanted. He just didn't do it perhaps the way we would like to have him had him do it. Second factor. Remember what his will says. I leave my property to my spouse if she survives me. If she does not survive me or dies prior to distribution, then these other things happen. These fatal words survive to distribution. This is what Judge Nielsen referred to as cutback language. And under Washington law, there's a pretty good indication that the positive idea, if she survives me, survives the negative idea, survives to distribution. I think that from the will itself, and that's exactly what Judge Nielsen was doing. From the will itself, you can determine that we have an intention that all she had to do was survive his death. If you do have to go to extrinsic evidence, if you do have to go into these affidavits and so forth, if we did have to go on remand, bear in mind that it has now been nine years since he died. The government concluded its examination in 1997. The record shows that the government had many of these affidavits available to it during the audit process. There was no contact with any of these people. If we remand the case... Well, but I can see you're getting to arguing you should be making to the district court if you get to remand. I mean... I know. It's not a matter... We can't consider that here. Let me ask you, though, a question that's troubling me much more, and that is, you know, I don't follow your argument about trying to distinguish what I think the two cases that the government primarily depends upon, Bond and Hine. I mean, you know, the factual and the governing law are virtually identical to this case, both of those. In your other cases, you could say, well, it was a mistake, you know, even to put that language in, right? In fact, it was. You said it wasn't in Bond. Your Honor, in the Bond case, you had an experienced lawyer, Dudley Pancho, who actually added the language. Now, there is some question in Bond. There's no indication in Bond as such, direct indication that a marital deduction was intended. If you go to the Hine case, which Judge Hug is familiar with, there certainly was no indication that a marital deduction was intended. In fact, when they looked at the extrinsic evidence, they said, well, gee, there isn't anything in here that would suggest that this fellow intended a marital deduction. There's nothing in the record. There's nothing on the will. The will says survive distribution. There's nothing in the record that indicates he meant anything except survive distribution. There's nothing in the Hine case or the Bond case that says, hey, I leave this property to my spouse if she survives me. If she does not survive me or does not survive the distribution, it's going to go someplace else. There's nothing in the Hine case or in the Bond case in which we have a $600,000 question, the exact amount of the exemption, if we get to 1987. What is it about the extrinsic evidence that you believe the show is intended? Your Honor, the extrinsic evidence deals with three areas. One of the areas, of course, are the notes that we have from Tony Sauter. One of the areas of evidence, of course, is the irrevocable life insurance trust with second-to-die life insurance. Now, you don't do that if you think you're going to die if you're going to have the death first. The third thing that we deal with with extrinsic evidence is actually the general comment by Marie Sauter that she understood there would be from Tony, no estate tax paid on the first death. We have the same concept from Doug Sauter, the son. No estate tax on the first death. We have the same thing from the accountant. No estate tax on the first death. He didn't think he was going to pay any estate tax the first death. He thought he had done it right. What he didn't do right is that he tried to steal from somebody else's will. He tried to save some money by doing it himself. And that's unfortunate because we are now nine years after his death. We have an 83-year-old widow who's been working on this thing for nine years, and we may be a couple more years, and that just is not nice. Does the court have any other questions? What's your principal distinction with the Hine case? In the Hine case, there is absolutely no indication in the will or in the extrinsic evidence that anybody ever really thought about the marital deduction. What you have in the Hine case is you have experienced lawyers who draft a will that says, I leave this property to my spouse if she survives me. And by the way, that's a blended family. That's not like this will where we have the same people. The other thing in the Hine is we don't have $600,000, and we have a self-drafted will. Your Honor, my time is almost up. I do ask the court to affirm the senior judge's... Let me ask you one more question. I just found it now. In the Washington revised statute, the 11.108.060, right? Yes. And it says this. Any marital deduction gift that is conditioned upon defense for spouses surviving defense for a period of more than six months is governed by the following. Two, property that is subject to the marital deduction gift must be held in a trust, meeting the requirements of Section 205.6 of the IRC. Your Honor, I tried to address that before. I don't think I did a very good job of it. That would make no sense if it said we had to have a trust... It makes sense, but that's what it says. No, what they're trying to say is if you've got that, put the property into a trust. If this statute is going to apply, put this property into a trust in the real world so that it gets to where we think the decedent wanted it to go using the survive the distribution language. The way they were, Washington legislature did a lousy job of wording that, but it would make no sense to have a requirement. What does it mean? It really means that if you try to, if you try to make sense of it, what they tried to say was this. I've got a will that says survive to distribution. We've gone six months after death. For gosh sakes, put the property into a trust. Put the property into the trust, testator. It qualifies for the marital deduction because we're afraid that it might actually require vesting within the six-month period when this guy doesn't want it to. What are you saying? Just a precatory? It's not a mandatory requirement? Or if you die in 1997 or later, you're supposed to put this stuff into a trust after the marital deduction is determined. It's lousy language. I drafted it. I shall try to digest that. I understand. It's bad language. All right. Thank you, Mr. Randolph. Your Honor, I appreciate that. Okay, rebuttal here? I'd like to address the $600,000 question, as Mr. Randolph put it. It surely is evidence of intent, isn't it? Well, no, it's not here because the problem with this is that the unified credit was enacted as a phased-in credit. And in 1983, when Mr. Souder wrote his will, the unified credit would have exempted gifts to his children only up to $275,000. So if he died right after he wrote this will, and the marital deduction had been allowed in full, Mr. Souder's estate still would have paid very substantial estate taxes. And that credit was gradually phased in. It was only four years later that you finally get the $600,000. To assume that he's basing his intent that his estate pay no taxes on the $600,000 gift, when that's not the effect it would have had for those four years, doesn't make sense. It would suggest that Mr. Souder also knew he was going to die more than four years after he wrote the will, which just doesn't seem to make sense. I'd also like to address the other aspects Mr. Randolph raised about the intent inferred from the will. The fact that it's a non-intervention will doesn't give the widow, even when she's the executor, a vested interest. It just gives her the right to transfer property without intervention of the court. And it's just like, it's exactly like the Vine case, which involved the same Washington statutes. And there the court specifically held that it didn't make a difference in terms of whether it was a terminable interest. And finally, addressing the cutback language argument here. But she could have transferred it. She could have, under that power, have transferred it to herself. She could have transferred it to herself, but her interest could have terminated if she died before distribution of the estate. And you would still have the same terminable interest problem of property that could pass from Mr. Souder's estate without being taxed to a third party in the event that Mrs. Souder didn't survive distribution. And that's what Congress was trying to avoid. It was trying to make sure that the rules were drafted, that the law was drafted such that property couldn't pass through both of a married couple's estates and avoid taxation. And in the case where something falls through the cracks, like this case, the law is drafted with a preference towards protecting the public fisc and making sure that at least one estate pays taxes. And then Section 2013 of the code actually provides a credit that's a decreasing credit over 10 years that's designed to protect the estate. I'm not sure I follow that. If she had transferred it all to herself, as the initial part of the will said, she would have, on her death, paid the tax. So it would be the same as a marital deduction, wouldn't it not? Well, but the problem would be that that property wouldn't have vested in her estate yet because she had to survive to distribution. So the property actually would not have been part of her estate. Even if she'd actually taken possession of the property, she would have only held that property in trust. It wouldn't have been her vested interest that could pass through her estate. I don't believe you on it. My understanding of the non-intervention powers under Washington law is that it simply gives her something, a trust instrument that's tantamount to ownership that would entitle her to enjoy the property and have it. But if she died before distribution, I don't believe that property would pass through her estate. And that's what the marital deduction, the term of interest exception to the marital deduction is designed to protect against. And just the final point on the saving statute, actually the one that definitely applies here because it specifies the survivorship requirement in excess of six months, does clearly by its words require that the property be held in trust, which is not the case here. And this is not an ambiguous cutback provision. It's a clear-cut language requiring survival to distribution. I think my time is up. Are there any further questions? No. All right. Thank you very much. We thank both counsel for the very fine and outstanding argument in this case. I think it would be of great assistance to the panel. This case is now taken under submission. Let me ask Judge Hugg. Judge Hugg, do you want to take a recess? You want to take a recess before we continue? No recess, Judge Hugg. Okay. Then we'll call the next case. McPherson's versus Windermere Real Estate Services Company. Whose case is this one? It's Windermere. Who did this? Did you do it? Yeah, you're right. All right. Plaintiffs are the appellants, right?
judges: Hug, Tashima, Paez